**UNITED STATES ex rel. ROWE v. NICHOLSON, Superintendent of Federal Reformatory Camp. ***
No. 3907.

Circuit Court of Appeals, Fourth Circuit.
June 18, 1935.

Horace G. Marks, of New York City (James E. Wilkinson, of Brooklyn, N. Y., and Maurice B. Gladstone, of New York City, on the brief), for appellant.

H. H. Holt, Jr., Asst. U. S. Atty., of Norfolk, Va. (Sterling Hutcheson, U. S. Atty., of Richmond, Va., and A. E. Gottshall, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

*Writ of certiorari denied 56 S. Ct. 118, 80 L. Ed. —.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The appeal in this habeas corpus case is from an order of the District Court refusing to discharge the prisoner, Otis W. Rowe, from the custody of the Superintendent of the Federal Reformatory Camp at Petersburg, Virginia. The principal contention made on behalf of the prisoner is that he has fully served his sentence of imprisonment when the proper deduction therefrom is made for "good conduct" as provided for by USCA title 18, § 710. In opposition thereto the Superintendent of the Reformatory Camp shows that during service of Rowe's sentence, he was released on parole; that he was subsequently re-arrested and imprisoned for violation of the conditions of his parole; and in consequence thereof is obliged to serve the whole remainder of the term of the sentence as originally imposed without deduction of time allowed for good conduct. The question thus presented turns upon the proper construction of USCA title 18, § 719 (Act of June 25, 1910, c. 387, § 6, 36 Stat. 820) in conjunction with section 723c (Act of May 13, 1930, c. 255, § 3, 46 Stat. 272).

Section 719 provides that "if said order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced." Section 723c relating to the same subject matter provides that "the unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the institution, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve."

The prisoner Rowe was convicted in the Southern District of New York for fraudulent use of the mails and sentenced to three years penitentiary imprisonment to date from June 27, 1932. He was confined in the United States Penitentiaries first at Atlanta, Georgia, then at Lewisburg, Pennsylvania, until he was released on parole on October 19, 1933, having then completed a service of 480 days. On April 27, 1934, he was returned to Lewisburg as a parole violator and subsequently transferred to the Reformatory Camp at Petersburg, Virginia. Under date of June 8, 1934, the United States Parole Board issued its certificate of revocation of his parole, and the Superintendent of the Reformatory Camp has exhibited as authority for the prisoner's continued detention properly authenticated copies of the original commitment and the certificate of revocation of parole. It is agreed that the prisoner has yet to serve a substantial portion of his original term of imprisonment, if he is not entitled to deduction therefrom for allowance of time for good conduct, which in the present case would be at the rate of seven days in each month of the three year sentence.

On behalf of the prisoner it is argued that section 719 in providing that "the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced" should be construed in subordination to section 710 which provides for the good time allowance of prisoners while in penal institutions; that the two sections are not inconsistent, and are in pari materia; and that therefore "the remainder of the sentence originally imposed" means the term of the sentence less the allowance for good conduct *while imprisoned,* unaffected by conduct while on parole; and it is said that the wording of section 723c as above quoted fortifies this contention. The contrary was, however, expressly decided by the Circuit Court of Appeals for the Ninth Circuit in Halligan v. Marcil, 208 F. 403, before the enactment of section 723c in 1930; and by the Circuit Court of Appeals for the Fifth Circuit in Aderhold v. Perry, 59 F.(2d) 379, 380; Morgan v. Aderhold, 73 F.(2d) 171; Platek v. Aderhold, 73 F. (2d) 173; Harrell v. Aderhold, 73 F.(2d) 189, 190 (all decided after the enactment of section 723c). See also Ex parte Marcil (D. C.) 207 F. 809; Ebeling v. Biddle (C. C. A.) 291 F. 567; United States ex rel. Anderson v. Anderson (D. C.) 8 F. Supp. 812, affirmed on appeal by the Circuit Court of Appeals for the Eighth Circuit, March 11, 1935. 76 F.(2d) 375.

We are in accord with the reasoning and conclusions in these cases. It must be borne in mind that the legal philosophy underlying the parole law is not a release of the prisoner from all disciplinary restraint but is rather merely "an extension of the prison walls"; and the prisoner while on

parole remains "in the legal custody and under the control of" the Parole Board. 18 USCA § 716; Anderson v. Corall, 263 U. S. 193, 196, 44 S. Ct. 43, 68 L. Ed. 247; Morgan v. Aderhold (C. C. A.) 73 F.(2d) 171, 172; Stockton v. Massey, 34 F.(2d) 96 (C. C. A. 4). And the so-called good time allowance is to be received only by one "whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment." Section 710. It seems to have been the uniform administration of the law to treat the prisoner's record during the entire term of imprisonment as an entity to determine whether the deduction from the original sentence for good conduct is allowable and thus, as was said in Aderhold v. Perry, supra, "the credit is not a vested right, but only contingent until a time arrives such that its allowance will end imprisonment." It is entirely consistent with this view of the nature of parole to treat the conduct of the paroled prisoner, during the period that he is released on parole, as a part of his record of conduct during the whole of the term for which he was sentenced. And thus a violation of the conditions of his parole, entailing re-imprisonment, fairly constitutes a bar to his allowance of time for good conduct which he has not earned.

 Another contention here made on behalf of the prisoner is that the Parole Board did not accord him a proper hearing before revocation of his parole. USCA title 18, § 719, provides "At the next meeting of the board of parole held at such prison after the issuing of a warrant for the retaking of any paroled prisoner, said board of parole shall be notified thereof, and if said prisoner shall have been returned to said prison, he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof." It appears from the record in this case that Rowe was taken back to Lewisburg on April 27, 1934, and on June 8, 1934, the Parole Board issued its formal certificate reading as follows:

"The United States Board of Parole has heard the case of Otis W. Rowe, No. 25 N. E. U. S., Northeastern Penitentiary, Lewisburg, Penn., in the matter of violation of Parole. And on the date of this certificate has ordered that the parole heretofore granted (or imposed by Public 210, 72nd Cong.) be revoked and that this prisoner serve the remainder of his sentence as originally imposed as is provided by law.

"In Witness Whereof this certificate bearing the Seal of the United States Board of Parole is issued.

"For the United States Board of Parole "[Seal] Ray L. Hoff, Parole Executive "Date, June 8, 1934."

At the hearing in the District Court the prisoner sought to attack the recital of the official certificate that he had received a hearing in accordance with the statute by his own verbal testimony to the contrary. Objection was made, and sustained by the court, to this line of testimony on the ground that it constituted a collateral attack on the certificate, but nevertheless, for the purposes of appeal, Rowe was permitted to testify, and it appeared from his testimony so given that he was in fact given a hearing by Dr. Stannard, one of the three members of the Parole Board; that a stenographic record was made of what then transpired, and subsequently the final action was taken by the Parole Board at Washington, and the certificate issued. Rowe further testified that he had requested a hearing before the Parole Board but was overruled; that he never consented to the consideration of his case by the Board without a hearing or without his presence or in Washington in his absence, but that he did not make any objection to Dr. Stannard holding the hearing and did not advise her that he did not wish the hearing to be held by her and that he was allowed to state his case to her and knew that she was a member of the Board; but that he did not waive any of his rights. Apparently the prisoner was duly informed of the final decision of the whole Board but made no protest in writing or otherwise until nearly a year thereafter when the petition for habeas corpus was filed. The only basis for the contention now made that the petitioner was deprived of due process with regard to the hearing is that his oral testimony was heard by only one and not by two or three members constituting a quorum of the Board.

It further appeared at the habeas corpus hearing in the District Court that counsel for Rowe requested the production of the minutes of the hearing before Dr. Stannard and before the Parole Board but that these were not produced. Whether they were available or whether any attempt had.

been made to procure them on behalf of the prisoner is not disclosed by the record which, however, contains the recital, over the certificate of the District Judge, that the respondent "showed that a hearing as provided by law had been accorded the relator" (Rowe).

A very similar situation was considered by the Circuit Court of Appeals for the Fifth Circuit in Harrell v. Aderhold, supra, where the view was expressed as follows:

"The right to appear before a quorum of the board may be important if the facts be in dispute or if the question be one of discretion. But it is hardly jurisdictional since it exists only when the prisoner is present in the prison. It can be waived."

In that case the basis for the holding that the prisoner was not entitled to be discharged on habeas corpus was placed on the ground that the presumption of regularity in favor of the official action had not been overcome.

Here we take the view that the prisoner's long delay in making objection to the alleged informality in the hearing accorded him, amounted to acquiescence by him in the procedure followed. Moreover, in our opinion it is not competent, in a habeas corpus proceeding of this nature, to attack the formal certificate of the Board which recited that a hearing was given and that parole was revoked, in the collateral way which was here attempted by the prisoner's merely verbal contradiction of the certificate. It must be remembered that the Parole Board was not a party to this proceeding and so far as the record shows had no notice of its pendency. It would promote confusion in the administration of the parole law to permit such collateral attacks on the Board's formal actions. It is unnecessary to decide, and we do not decide, that one member of the Board can validly act for the whole Board in hearing the prisoner with respect to revocation of parole where a personal hearing is required by the statute and timely demand therefor is made and insisted on by the prisoner.

■ If, in point of fact, the prisoner in this case has not been given a proper hearing by the Board, and is now insistent that it should be had, it would appear that his remedy lies in a direct proceeding against the Board for mandamus in the Supreme Court of the District of Columbia. Kendall v. United States, 12 Pet. 524, 9 L. Ed. 1181; United States ex rel. Dunlap v. Black, 128 U. S. 40, 45, 9 S. Ct. 12, 32 L. Ed. 354; Keller v. Potomac Elec. Co., 261 U. S. 428, 443, 43 S. Ct. 445, 67 L. Ed. 731; McCarl v. United States, 58 App. D. C. 319, 30 F.(2d) 561, 563; Smith v. United States, 57 F.(2d) 998 (C. C. A. 4). We do not mean to say that the important remedy of the writ of habeas corpus may not be available to re-imprisoned paroled prisoners in cases, if any should arise, where no hearing at all is accorded by the Board within a reasonable time after re-imprisonment.

■ In the appellant's brief the further point is made that the warrant of arrest issued to re-take the prisoner for violation of parole, as provided for by section 723c was improvidently issued in this case because not under oath or affirmation and not based on probable cause as required by the Fourth Amendment. But nothing appears in the record to support this contention and it therefore requires no further notice, especially as it was not urged in oral argument.

The order appealed from is hereby Affirmed.