### VOORHEES v. COX.
### No. 12809.

Circuit Court of Appeals, Eighth Circuit.

Jan. 31, 1944.

Rehearing Denied Feb. 18, 1944.

John W. Oliver, of Kansas City, Mo., for appellant.

Otto Schmid, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before STONE, THOMAS, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from an order and judgment of the District Court for the Western District of Missouri discharging a writ of habeas corpus theretofore issued in behalf of the above-named appellant. The facts are presented by an agreed statement, which has been certified to this court as the record on appeal, pursuant to Rule 76 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The facts agreed, and as found by the trial court, material to the disposition of this appeal, are the following:

March 21, 1935, appellant was sentenced, on plea of guilty to violation of the postal laws, 18 U.S.C.A. § 317, to five years imprisonment in the United States Penitentiary at Leavenworth, Kansas. Pursuant to Act of June 21, 1902, 18 U.S.C.A. § 710, he had earned 480 days of good conduct time, and was released from prison November 26, 1938. By Act of June 29, 1932, a prisoner thus released with credit for good conduct, "shall upon release be treated as if released on parole and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms specified in his sentence." 18 U.S.C.A. § 716b. Appellant was therefore to have been considered as on conditional release, and subject to the parole laws from November 26, 1938 to what would be the expiration of his maximum term by its provisions, to wit March 21, 1940.

September 11, 1939, appellant was sentenced in the District Court of the United States for the Eastern District of Illinois, on plea of guilty, to five years imprisonment in the United States Penitentiary at Leavenworth, Kansas, again for violation of the postal laws, 18 U.S.C.A. § 317. On this second sentence appellant earned his deduction for good time, and was thus, under that sentence, entitled to be released from prison on May 19, 1943. September 30, 1939, the Chairman of the United States Board of Parole issued a warrant for retaking appellant on his first sentence, reciting his conditional release November 26, 1938, and reliable information that appellant had violated the conditions of that release, and was therefore deemed to be a fugitive from justice. The warrant commanded the retaking of appellant whenever found and him returned to the institution thereinafter designated. The writ, on its face, was issued September 3, 1939, but the serving officer did not receive it until May 28, 1941, and actually served it May 19, 1943, after the conclusion of the service of the second sentence.

A hearing on the revocation of the warrant was held July 30, 1943 by an examin-

er designated by the Board of Parole, and the Board formally issued its order revoking the parole August 5, 1943. Appellant was transferred from Leavenworth to the Medical Center for Federal Prisoners at Springfield, Missouri, May 24, 1941.

The points relied upon by appellant in this appeal are thus stated:

"1. The trial court erred in refusing to grant the prayer of the petition for writ of habeas corpus for the reason that:

"(a) The petitioner had served in full the maximum term of the five year sentence imposed upon him by Judge Davis of the District Court of the United States for the Eastern District of Missouri.

"(b) The effort of the United States Board of Parole (thus far successful) to make the petitioner re-serve that portion of his first sentence which petitioner earned as a good conduct deduction, is unauthorized by any law of the United States and is in violation of the Fifth Amendment of the Constitution of the United States.

"(c) Your petitioner was, under the admittedly applicable parole law, in the custody of the warden of the Federal Penitentiary under both the first and second sentences throughout the terms of each sentence. The second sentence did not provide that it should run consecutively with the first sentence. Under those factual circumstances, the two sentences ran concurrently as a matter of law, and the time served on the second sentence was also time served on the first sentence.

"(d) The United States Board of Parole admittedly possessed power to revoke the conditional release of the first sentence, but that power was present only if said Board acted before the expiration of the maximum term of that sentence. In the case at bar it admittedly failed to act within that time. After the expiration of the maximum term of the first sentence the Board of Parole was without power, authority or jurisdiction to act.

"2. The trial court erred in its conclusion of law that the two sentences did not run concurrently because it overlooked the fact and the law that the petitioner was in the custody of the warden of the Federal Penitentiary throughout the terms of both sentences.

"3. The petitioner was not given a hearing pursuant to the law as it existed at the time the warrant was issued, which required that the full Board hold said hearing and not an examiner appointed by it. The attempt to hold a hearing before an examiner pursuant to a subsequently enacted law is in violation of the Ex Post Facto Clause of the Constitution of the United States. (Article 1, Section 9, thereof)."

The Sections of Statute, and the parts thereof applicable to the situation here presented, compiled and collated in 18 U.S.C.A. are the following:

Section 710 provides computation for deductions from sentences for good conduct, under which appellant was conditionally released with credit for time thus earned.

Section 716b. "Prisoners released with credit for good conduct treated as on parole until expiration of maximum term. Any prisoner who shall have served the term or terms for which he shall after June 29, 1932 be sentenced, less deductions allowed therefrom for good conduct, shall upon release be treated as if released on parole and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms specified in his sentence: Provided, That this section shall not operate to prevent delivery of a prisoner to the authorities of any State otherwise entitled to his custody."

Section 719. "When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to appear before said Board of Parole, a member thereof, or an examiner designated by the Board. The said Board may then, or at any time in its discretion, revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

Section 723c. "The Board of Parole created by Section 723a of this title, or any member thereof, shall hereafter have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not

diminish the time he was originally sentenced to serve."

The insistence of appellant that he had served in full the maximum term of the five year sentence imposed upon him in the District Court of the United States for the Eastern District of Missouri at the time the warrant for retaking was served upon him May 19, 1943, when he was about to be released from the service of his second five year sentence imposed upon him September 11, 1939 in the District Court for the Eastern District of Illinois, is based primarily upon his contention that the sentences ran concurrently as a matter of law, and that the time served on the second sentence was also time served on his first sentence from which he had been paroled with a good time credit of 480 days. Not only is this contention inconsistent with the purpose and policy of the parole law, and the statutes enacted for its protection and enforcement, but would attribute to the Congress a construction which would necessarily lead to absurd results. United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957. While appellant under both convictions was sentenced to the same penitentiary, it is not true that the appellant was in the custody of the warden of that penitentiary throughout the terms of both sentences. The warden at most is a mere custodian under the authority of a commitment and not otherwise. When parole was granted under the first sentence that custody was interrupted. A commitment was issued under the Illinois sentence, and under that commitment, and that alone, the subsequent custody was exercised.

We have thus addressed ourselves to specific features of appellant's arguments in support of his contentions, but all such matters have been so finally and conclusively set at rest by courts of last resort that we find it necessary to call attention only to a limited number of such decisions.

In Zerbst, Warden, v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 873, 82 L.Ed. 1399, 116 A.L.R. 808, respondents were paroled before completing their sentences in federal prisons, and while on parole they committed second federal offenses for which they were convicted, and thereafter completely served sentences in Atlanta Penitentiary. They contended that from the moment of their imprisonment in the penitentiary under the second sentences they also began service of the unexpired part of their orig-

inal sentences. The Supreme Court held that, after completion of the second sentences, the Board of Parole has authority to require completion of the first sentences, service of which ceased due to the interruption by parole violations. Mr. Justice Black said: "When respondent committed a federal crime while on parole, for which he was arrested, convicted, sentenced, and imprisoned, not only was his parole violated, but service of his original sentence was interrupted and suspended. Thereafter, his imprisonment was attributable to his second sentence only, and his rights and status as to his first sentence were 'analogous to those of an escaped convict.' Not only had he—by his own conduct—forfeited the privileges granted him by parole, but since he was no longer in either actual or constructive custody under his first sentence, service under the second sentence cannot be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system."

The holding in that case was: "A prisoner sentenced to a federal penal institution for an offense committed while he was on parole from such an institution may be required by the Parole Board to serve the unexpired portion of his first sentence after the expiration of his second sentence."

Compare Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247, and Stockton v. Massey, 4 Cir., 34 F.2d 96; Adams v. Hudspeth, 10 Cir., 121 F.2d 270; Christianson v. Zerbst, 10 Cir., 89 F.2d 40; United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957.

The trial court correctly found that the two sentences did not run concurrently and that, eliminating the time while appellant was serving the second sentence, the parole was revoked well within the maximum period of the first sentence.

Finally, appellant urges that at the time the revocation warrant was issued the law required that the hearing upon such warrant should be held before the full Board of Parole, and that the attempt to hold that hearing before an examiner appointed by the Board under a subsequently enacted law was in violation of the ex post facto provision of the Constitution. As said by the Supreme Court in Beazell v. Ohio et. al., 269 U.S. 167, 46 S.Ct. 68, 69, 70 L.Ed. 216, this constitutional provision was not intended "to limit the legislative control of remedies and modes of procedure

136

which do not affect matters of substance." It does not alter the situation of a party to his disadvantage. Duncan v. Missouri, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485; Falter et al. v. United States, 2 Cir., 23 F.2d 420, 425.

The action finally taken was by the Board in exercise of its authority and duty. This contention of appellant is without merit. Finding no reversible error, the judgment is affirmed.